**INTERNATIONAL UNION OF OPER-
ATING ENGINEERS, LOCAL 150,
AFL–CIO, Plaintiff,**

v.

**J. PEASE CONSTRUCTION CO., INC.,
an Illinois Corporation, Defendant.**

No. 81 C 3889.

United States District Court,
N. D. Illinois, E. D.

June 28, 1982.

Roger N. Gold, Anita Tanay, Louis E. Sigman, Baum, Sigman & Gold, Ltd., Chicago, Ill., for plaintiff.

Robert P. Handler, Daniel S. Mathless, Baum, Glick & Wertheimer Assoc., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

The plaintiff, International Union of Operating Engineers, Local 150, AFL–CIO ("Union") filed this action to enforce an arbitration award rendered in its favor pursuant to a collective bargaining agreement between the Union and the defendant, J. Pease Construction Company ("Pease"). Enforcement is sought pursuant to section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a). Presently before the Court are the Union's motions to strike Pease's affirmative defenses because they are untimely and for summary judgment. The Union also seeks attorneys' fees. For the reasons stated below, the Union's motions to strike affirmative defenses and for summary judgment are granted and its request for attorneys' fees is denied.

On April 9, 1981, the Union sent a letter to Pease charging that Pease's utilization of employees who were not referred from the Union's hiring hall was in direct violation of the agreement between the parties. The letter stated:

> The Union shall continue to hold your Company liable for all back wages and fringe benefits lost by members of the bargaining unit who would have worked had your Company honored our Agreement.

Pease was further notified that unless the grievance was resolved informally, it would be referred to the Joint Grievance Committee. Article VIII of the collective bargaining agreement between the parties provides that if the representatives of the parties are unable to resolve a dispute, the grievance is to be submitted to a Joint Grievance Committee composed of three representatives of the Union and three representatives of the Employer. It is further provided:

> Where the Joint Grievance Committee, by a majority vote, resolves the grievance, no appeal may be taken and such resolution shall be final and binding on all parties and individuals bound by this agreement.

Informal resolution was unsuccessful and the grievance was referred to the Joint Grievance Committee. On April 23, 1981, the Committee sent a letter to Pease informing it that a hearing would be held on May 5, 1981. The letter noted that the Committee was empowered to rule in the absence of either party. The hearing was held. It is undisputed that Pease chose not to appear.

The Committee concluded that Pease had violated the terms of the collective bargaining agreement by using employees who had not been referred by the Union. The Union was awarded 17 days of back pay, plus fringe benefits for three Union members. On May 5, 1981, the Committee sent a letter to Pease informing it that the back pay award amounted to $8,151.29. Pease refused to comply. Suit was filed on June 10, 1981 to enforce compliance with the award.

Nine months after the issuance of the award and subsequent to the filing of this action, Pease requested that the Joint Grievance Committee either vacate or recalculate the award. The Committee rejected each request. Pease now contends that the Committee exceeded its powers by awarding an excessive amount of back pay without sufficient evidence to substantiate Pease's violation and, therefore, that the award is "completely irrational." In the alternative, Pease asserts that the Committee miscalculated the amount of back pay it assessed. In effect, Pease is asking this Court to conduct a *de novo* review of the Committee's award.

We cannot do this. The scope of review by a federal court in a suit to enforce an arbitration award is extremely limited. The Supreme Court has stated that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Of course, the Supreme Court's direction does not mean that an arbitrator's decision is absolutely immune from scrutiny. His award is legitimate only so long as it draws its essence from the collective bargaining agreement and his interpretation can in some rational manner be said to derive from the agreement. *Id.* See also *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

The Court of Appeals for the Seventh Circuit has interpreted the standards set forth in the "Steel Workers Trilogy" to mean that "a reviewing court should not disturb the award so long as the interpretation was not arbitrary." *Mogge v. District 8, International Association of Machinists*, 454 F.2d 510, 513 (7th Cir. 1971). Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to the reviewing court. *Id.* See also *Amoco Oil Co. v. Oil, Chemical and Atomic Workers International Union, Local 7–1, Inc.*, 548 F.2d 1288 (7th Cir.), cert. denied 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977); *F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union Local 781*, 629 F.2d 1204 (7th Cir. 1980), cert. denied, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981), *Chicago Cartage Company v. International Brotherhood of Teamsters, Local 710*, 659 F.2d 825 (7th Cir. 1981).

An arbitration award rendered by a Joint Grievance Committee comprised of representatives of labor and management is governed by the same principles of enforcement and review as is a decision made by an individual arbitrator. *General Drivers, Warehousemen & Helpers Local 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *Chicago Cartage Co. v. International Brotherhood of Teamsters, Local 710, supra.*

The attack made by Pease upon the award would require the Court to impermissibly review the merits of the Grievance Committee's award. Certainly there is no suggestion here that the dispute itself is outside the bounds of the collective bargaining agreement. Neither are we persuaded that the Committee's decision was reached in an arbitrary, capricious or irrational manner. It is undisputed that the Union submitted evidence to the Committee bearing on the extent of its damages. It was Pease's decision not to appear at the hearing to controvert that evidence.

Even if our review were not circumscribed, Pease's attempt to assert its affirmative defenses is untimely. Under

applicable Illinois law, *Ill.Rev.Stat.*, ch. 10 § 112, a motion to vacate or modify an arbitration award must be filed within 90 days following the issuance of the award. Pease, however, argues that his motion to vacate is governed by federal law, United States Arbitration Act of 1925, 9 U.S.C. §§ 1 *et seq.* An identical argument was recently raised and rejected by the Court of Appeals for the Seventh Circuit in *Chauffeurs, Teamsters, Warehousemen and Helpers, Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023 (1980). In *Jefferson Trucking*, the court noted that section 301 of the Labor Management Relations Act does not provide for a time limitation on actions to vacate an arbitrator's award brought under that section. Rather, "the timeliness of a Section 301 suit is to be determined, as a matter of federal law, 'by reference to the appropriate state statute of limitations.'" *Id.* at 1026, quoting *U. A. W. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–705, 86 S.Ct. 1107, 1112–1113, 16 L.Ed.2d 192 (1966). *Accord United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Those decisions are controlling in this case.

Moreover, even if state law was not applicable, the United States Arbitration Act provides that notice of a motion to vacate an award or to correct or modify an award must be served within three months following the filing or delivery of the award. 9 U.S.C. §§ 10, 11. Pease, therefore, is time barred to assert its affirmative defenses under either statute. The Union's motion to strike those defenses is, therefore, granted. Because no genuine issue of material fact remains for trial, summary judgment is appropriate as a matter of law. *See Cedillo v. International Association of Bridge & Structural Iron Workers, Local 1*, 603 F.2d 7, 10 (7th Cir. 1979).

The Union also seeks attorneys' fees. The American rule is that absent specific statutory or other expressed authorization, attorneys' fees are not recoverable by the prevailing party to a lawsuit. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Bailey v. Meister Brau,*

*Inc.*, 535 F.2d 982 (1976). An exception to the rule is recognized which permits a court to tax attorneys' fees against a losing party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons ...." *Aleyska Pipeline Service Co. v. Wilderness Society, supra* 421 U.S. at 258–59, 95 S.Ct. at 1622–1623, citing *F.D. Rich., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1975).

Section 301 of the Labor Management Relations Act does not provide that attorneys' fees may be awarded to a successful party. Nonetheless, a number of federal courts have held that, in the interest of effecting national labor policy, their equitable power permits them to award attorneys' fees for an unjustified refusal to abide by the award of an arbitrator or a labor-management grievance committee. *See, e.g., Local 149 U. A. W. v. American Brake Shoe Co.*, 298 F.2d 212 (4th Cir.), *cert. denied* 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962); *General Drivers and Helpers Union, Local 554 v. Young and Hay Transportation Co.*, 522 F.2d 562 (8th Cir. 1975); *United States Steelworkers v. Butler Manufacturing Co.*, 439 F.2d 1110 (8th Cir. 1971).

■ The Seventh Circuit Court of Appeals apparently has not considered the precise issue. It is instructive, therefore, to look for guidance to the standards which the Seventh Circuit has used to award attorneys' fees in non-labor cases. Those standards clearly indicate that the Court's inherent equitable powers may only be invoked to award attorneys' fees to prevent gross injustice, fraud, or bad faith. *See, e.g., Bailey v. Meister Brau, Inc., supra; Adams v. Carlson*, 521 F.2d 168 (7th Cir. 1975); *H. K. Porter Co., Inc. v. Black & Decker Manufacturing Co.*, 518 F.2d 1177 (7th Cir. 1975). The standards for determining bad faith necessarily are stringent. *Adams v. Carlson, supra.*

■ Based on this record, we cannot say that Pease's failure to attend the grievance

proceeding[1] and his unquestionable foot-dragging in challenging the award of the Committee is the type of behavior which clearly constitutes bad faith. Neither will a failure to award attorneys' fees work a gross injustice on the Union. This matter has not proceeded to trial and the Union has been awarded the amount of damages that it requested. Accordingly, the Union's request for attorneys' fees is denied.

IT IS ORDERED that the Union's motions to strike affirmative defenses and for summary judgment be granted.

IT IS FURTHER ORDERED that judgment be and is hereby entered in favor of the plaintiff and against the defendant in the amount of $8,151.29, thereby confirming and enforcing the arbitration award rendered pursuant to the collective bargaining agreement between the parties.

See also, D.C., 518 F.Supp. 1321.

---

**1.** Pease indicated that it did not attend the Grievance Committee hearing because it believed that its potential liability was far less than the amount awarded by the Committee.