Jerry L. YOUNG, Plaintiff,

v.

INTERNAL REVENUE SERVICE; Roscoe L. Egger, Jr.; Paul D. Williams; and Anita Wells, Defendants.

Civ. No. F 84–135.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 25, 1984.

Jerry L. Young, pro se.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., Jerome A. Busch, Trial Atty., Tax Division, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

LEE, District Judge.

This matter is before the court on defendants' "Motion to Dismiss and for an Award of Attorney's Fees and Costs," filed July 20, 1984 and plaintiff's "Motion for Summary Judgment," filed August 2, 1984. For the following reasons, defendants' motion will be granted, and plaintiff's motion will be denied.

Plaintiff is proceeding *pro se*. *Pro se* pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This court also recognizes that federal courts have historically exercised great tolerance to insure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. *Pro se* complaints, such as plaintiff's, are held to less stringent pleading requirements; technical rigor in the examination of such pleadings is inappropriate.

Liberally construing plaintiff's complaint and "statement of support" filed with the complaint, it appears that plaintiff is contesting the assessment of federal income taxes and certain tax deficiencies against him by the Internal Revenue Service ("IRS") and its agents. According to the statutory notice of deficiency forms attached to the complaint, plaintiff owes a total of $17,968.00 in taxes for the years 1978–1981, plus penalties under 26 U.S.C. § 6653(b) totaling $8,984.00. Plaintiff has filed this suit to redress the violation of his civil rights allegedly caused by this assessment of taxes, and seeks a total of 10.8 million dollars in damages.

The complaint lists 42 U.S.C. §§ 1981, 1983, and 1986 as the basis of the claim, but also alludes to the use of a "bill of attainer" [sic] and the violation of due process rights. Plaintiff believes the tax assessment violates his civil rights because the IRS was never created by "positive law" (that is, a law passed by the Congress) and thus has no jurisdiction over him. Also, the plaintiff believes that the Internal Revenue Code does not apply or pertain to him because he is a "sovereign citizen."

Defendants have responded by filing a motion to dismiss. The thrust of the motion is that none of the named defendants can be sued. Defendants allege that the IRS and the United States (to the extent it is involved here) are protected by principles of sovereign immunity, while the individual defendants were improperly served and are protected by executive officer immunity. The motion also seeks fees and costs for defending this case.

Plaintiff has also filed a motion for summary judgment, alleging that the defenses offered are moot because the defendants are not "real persons." This court then issued a stay pending resolution of the motion to dismiss. The court turns to that motion first.

## MOTION TO DISMISS

Although defendants have denominated their motion as a motion to dismiss, it is clear that the issues presented by this motion are best addressed after reference is made to the exhibits and other pleadings in the case. When matters outside the pleading are presented to and not excluded by the court, a motion to dismiss will be converted into a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the fact is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or

an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.*, 549 F.2d 42 (7th Cir.1977). A party may not rest on the mere allegations of his pleadings or the bare contentions that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1983).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. The court views all evidence submitted in favor of the non-moving party. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.*, 693 F.2d 636, 639 (7th Cir.1982). Further, if the court resolves all factual disputes in favor of the non-moving party and still finds summary judgment in favor of the moving party is correct as a matter of law, then the moving party is entitled to summary judgment in his favor. *Egger*, 710 F.2d at 297. *See also Bishop v. Wood*, 426 U.S. 341, 348 n. 11, 96 S.Ct. 2074, 2079 n. 11, 48 L.Ed.2d 684 (1976).

■ Although not raised by the defendants directly in their motion, the court turns first to the issue of whether a proper basis of jurisdiction exists for hearing this cause. Because of the limited nature of a district court's jurisdiction, the court may inquire into its jurisdiction *sua sponte. Rice v. Rice Foundation*, 610 F.2d 471 (7th Cir.1979).

### A. Jurisdiction

■ Plaintiff's complaint asserts that the civil rights statutes, 42 U.S.C. §§ 1981, 1983, and 1986, give this court jurisdiction over his suit. However, none of these pro-

visions is an appropriate basis for relief in this case. Section 1981 is restricted by the import of its language to discrimination based on race or color. *Virginia v. Rives*, 100 U.S. 313, 25 L.Ed. 667 (1880); *Willingham v. Macon Telegraph Publishing Co.*, 482 F.2d 535, 537 n. 1 (5th Cir.1973). In fact, the language of § 1981 militates *against* plaintiff's case, because the section provides that "all persons" shall be subject to taxes. Section 1983 prohibits deprivation of rights under color of state law. However, actions of IRS officials, even if beyond the scope of their official duties, are acts done under color of federal law and not state law, thus making § 1983 inapplicable. *Seibert v. Baptist*, 594 F.2d 423 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir.1978). Section 1986 creates a cause of action for failure or neglect to prevent a § 1985 conspiracy. However, § 1985(1) deals with conspiring to prevent an official from discharging his duties, while § 1985(2) deals with obstructing justice, both of which are inapplicable here. Section 1985(3) requires that there be "some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' action," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), none of which is alleged to be present here. It is therefore obvious that none of these statutory provisions can provide plaintiff with a basis for suit.

■ The court notes that two general jurisdiction statutes may have some potential applicability to this case. However, the court is convinced that neither one of these statutes will supply this court with jurisdiction over plaintiff's claim. The first statute, 28 U.S.C. § 1340, grants the district court original jurisdiction of any civil action arising under any act of Congress providing for internal revenue. The very language of the statute indicates that this section does not create jurisdiction in and of itself. Section 1340 makes clear that the jurisdiction extends to civil actions arising under the Internal Revenue laws; as such,

the suit must be based on some cause of action which the Internal Revenue Code recognizes and allows the plaintiff to bring. Absent some recognition of this kind of suit under the Internal Revenue Code, § 1340 will not create an independent basis for jurisdiction. As one court has noted, "given the limitations which Article III of the Constitution places on the jurisdiction of the federal courts, it is doubtful that the various jurisdictional statutes [like § 1340] could do more than waive the congressionally imposed jurisdictional amount requirement." *Crown Cork & Seal Co. v. Pennsylvania Human Relations Commn.*, 463 F.Supp. 120, 127 n. 8 (E.D.Pa.1979).

■ It appears that this case does not arise under the Internal Revenue Code. Plaintiff does not seek either to enforce any provision of the Code or to pursue a statutory remedy under the Code. Rather, he seeks damages for the alleged violation of his rights. In fact, the whole thrust of plaintiff's case is that he is outside the scope of the Code so that the actions of the defendants are violations of his rights. However, if the plaintiff's claim comes from outside the Code, then it logically cannot "arise under" the Code, and therefore § 1340 cannot provide plaintiff with jurisdiction.

■ A second possible source of general jurisdiction is 28 U.S.C. § 1331, the federal question jurisdiction statute. Plaintiff claims that he is outside the scope of the federal income tax laws. Such a claim brings into question the interpretation of several provisions of the Internal Revenue Code. This may be sufficient to create some kind of federal question jurisdiction based on the interpretation of the Code. However, this federal question would not provide a sufficient jurisdictional basis for plaintiff's damage claim. In order to recover damages, the plaintiff must show that he can recover damages for violations stemming from defendants' alleged unconstitutional activity. Plaintiff can obtain damages against the defendants under only one of two theories: a claim under the Federal Tort Claims Act, 28 U.S.C.

§§ 2671–2680; or an implied cause of action under the principles of *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). As will be discussed more fully in the next section of this order, a claim under the Federal Tort Claims Act will fail on principles of sovereign immunity. Furthermore, in *Seibert v. Baptist*, 594 F.2d 423, 429–32 (5th Cir. 1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), the court refused to recognize a *Bivens*-type cause of action against the IRS and IRS officials and agents. The actions of the present defendants in assessing the taxes and penalties against the plaintiff and in generally operating under the IRS regulatory framework were not of the outrageous nature of those found in *Bivens*. This court agrees with the *Seibert* court and refuses to recognize a *Bivens*-type cause of action against the IRS or IRS officials and agents for the collection and assessment of taxes. Thus, while a federal question may exist, it provides no basis for plaintiff to recover damages. As such, § 1331 cannot provide this court with jurisdiction over plaintiff's damage claim.

Overall this court can find no basis for assuming jurisdiction over plaintiff's claim. However, out of an abundance of caution and a desire to give plaintiff a full review of his case, the court continues by analyzing the other issues raised by the motion to dismiss.

### B. The "Suability" of the Defendants

Plaintiff has named four defendants in this action: the IRS; Roscoe L. Egger, Jr., the Commissioner of the IRS; Paul D. Williams, District Director of the IRS; and Anita Wells, "as it is she who Mr. Young was to contact if he had decided to petition the tax court." Defendants' arguments for dismissal revolve around the status of these defendants and whether the plaintiff can sue them. It is therefore appropriate to examine the defendants in turn.

### 1. The Internal Revenue Service

■ The core of defendants' argument about the inability of plaintiff to sue the

IRS is the doctrine of sovereign immunity. It is well settled that the United States is a sovereign and, as such, is immune from suit without its prior consent. *United States v. Shaw*, 309 U.S. 495, 500–01, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940); *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir.1982); *Akers v. United States*, 539 F.Supp. 831, 832 (D.Conn.1982), *aff'd*, 718 F.2d 1084 (2d Cir.1983). Absent consent to sue, dismissal of the action is required. *Hutchinson*, 677 F.2d at 1327. The United States has waived its immunity with respect to some causes of action in the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671–2680. However, the Act, in § 2680(c), specifically excluded "any claim arising in respect of the assessment of collection of any tax or customs duty ...." It is therefore clear that the United States has specifically reserved its immunity with respect to claims arising out of tax collection and assessment. Thus, to the extent that any part of plaintiff's complaint can be construed as a claim against the United States, it is barred by the doctrine of sovereign immunity. *See Hutchinson; Seibert v. Baptist*, 594 F.2d 423 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *White v. Commissioner*, 537 F.Supp. 679, 684 (D.Colo.1982).

Plaintiff has attempted to make clear that his claim is not against the United States, but rather against the IRS. That is of little help to plaintiff because courts have found that the actions of the IRS or its agents fall under the Federal Tort Claims Act exception for collection and assessment of taxes. *See Morris v. United States*, 521 F.2d 872, 874 (9th Cir.1975); *Spilman v. Crebo*, 561 F.Supp. 652, 654–55 (D.Mont.1982). It is therefore clear that the IRS is immune from suit for tax collection or assessment activities.

■ Plaintiff attempts to circumvent this conclusion by arguing that the IRS is "a private corporation" because it was not created by "any positive law" (i.e., statute of Congress) but rather by fiat of the Secretary of the Treasury. Apparently, this argument is based on the fact that in 1953 the Secretary of the Treasury renamed the Bureau of Internal Revenue as the Internal Revenue Service. However, it is clear that the Secretary of the Treasury has full authority to administer and enforce the Internal Revenue Code, 26 U.S.C. § 7801, and has the power to create an agency to administer and enforce the laws. *See* 26 U.S.C. § 7803(a). Pursuant to this legislative grant of authority, the Secretary of the Treasury created the IRS. 26 C.F.R. § 601.101. The end result is that the IRS is a creature of "positive law" because it was created through congressionally mandated power. By plaintiff's own "positive law" premise, then, the IRS is a validly created governmental agency and not a "private corporation." It enjoys the sovereign immunity of the United States, and thus is entitled to summary judgment in this cause of action.

### 2. The Individual Defendants

Plaintiff names the three individual defendants apparently on the grounds that their failure to stop the assessment and collection of the taxes involved constituted a violation of his rights. The defendants have responded by asserting two reasons to dismiss the claim against them: improper service and immunity.

■ Defendants' improper service argument centers on the mode of service effected on the individual defendants. It claims that the individual defendants were not served personally as is required under Federal Rule of Civil Procedure 4(d)(1) because service was effected by sending copies of the complaint and summons by certified mail addressed to each of the individual defendants at the office of the IRS in Fort Wayne, Indiana. Such service is sufficient under Fed.R.Civ.P. 4(d)(5) for service of process on an officer or agency of the United States. However, plaintiff seeks to sue the individual defendants in their individual capacity, and as the defendants correctly point out, "where money damages are sought from a public official in his individual capacity, service by mail under Rule 4(d)(5) is insufficient." *Mick-*

lus v. Carlson, 632 F.2d 227, 240 (3d Cir. 1980). Accord Relf v. Gasch, 511 F.2d 804 (D.C.Cir.1975); Marsh v. Kitchen, 480 F.2d 1270 (2d Cir.1973). Thus, plaintiff has not yet properly served the individual defendants, but such improper service is not fatal to plaintiff's case. The court therefore turns to defendants' second basis for dismissal: immunity.

██ As was noted earlier, the United States has not waived its sovereign immunity with respect to claims arising out of tax assessment or collection. One cannot avoid this sovereign immunity by simply naming officials when the judgment would impact upon the public treasury. Vishnevsky v. United States, 581 F.2d 1249, 1255 (7th Cir.1978). At least one court has held that a suit against IRS officials in their official capacity is a suit against the United States, see Nelson v. Regan, 560 F.Supp. 1101 (D.Conn.1983), so that sovereign immunity would preclude the suit.

██ The United States Supreme Court, in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), discussed the parameters of the immunity that a federal executive officer enjoys within the scope of a federal agency position. The Court found that a federal official enjoys only a qualified immunity, so that he could be liable individually if he knows or should have known that he is acting outside the law. Id. at 506–07, 98 S.Ct. at 2911. The Court recognized, however, that some officials need absolute immunity because it is "essential for the conduct of the public business." Id. at 507, 98 S.Ct. at 2911. Some courts have read Butz as giving absolute immunity to IRS officials in actions for damages. Hutchinson v. United States, 677 F.2d 1322 (9th Cir.1982); Stankevitz v. IRS, 640 F.2d 205 (9th Cir.1981); Krzyske v. Commissioner, 548 F.Supp. 101 (E.D.Mich.1982); White v. Commissioner, 537 F.Supp. 679, 684 (D.Colo.1982). If the officials are alleged to have exceeded their authority and to have operated outside the scope of their official duties, then only the qualified immunity applies. Hutchinson, 677 F.2d at 1328; Nelson v. Regan, 560

F.Supp. 1101 (D.Conn.1983); Spilman v. Crebo, 561 F.Supp. 652, 655–56 (D.Mont. 1982). In order to present a situation where only the qualified immunity will apply, the complaint must contain specific allegations of the unconstitutional conduct by the official, White, 537 F.Supp. at 684, and must allege the specific statutory provision under which the official exceeded his authority. Spilman, 561 F.Supp. at 655–56.

██ The tenor of plaintiff's complaint is that he seeks damages from the individual defendants in their official capacities. The exhibits to the complaint, apparently included to show the actions of these individuals, are merely statutory forms for notice of tax deficiency. Certainly, the computation of the tax and the issuance of the forms are tasks done within the official capacity of the defendants. As such, the absolute immunity applies and the suit against the individual defendants must fail.

Even if the complaint is viewed as somehow alleging that these defendants exceeded their official authority, it must fail for lack of specificity. The complaint does not in any way specify the alleged unconstitutional conduct of the defendants, nor does it specify the statutory provision they exceeded. Despite the liberal construction called for by Haines v. Kerner, this complaint simply does not state a claim of exceeding official authority sufficient to call the qualified immunity into question. Therefore, the individual defendants are absolutely immune and cannot be sued.

Under the principles governing motions for summary judgment, then, the defendants have shown that there is no genuine issue of material fact in dispute between the parties, and the immunity of the IRS and the individual defendants entitles them to judgment as a matter of law. However, again out of an abundance of caution, this court now considers the merits of the various claims made by the plaintiff.

C. Merits of the Claim

A liberal analysis of the plaintiff's complaint and numerous other filings reveals

two basic claims by the plaintiff: that the income tax laws do not apply or pertain to the plaintiff; and that the plaintiff has been the subject of a bill of attainder. The court analyzes these two contentions in turn.

### 1. Application of Tax Laws to the Plaintiff

Plaintiff asserts that the Internal Revenue Code does not apply to him. The basis for this claim is not easily found in the complaint. According to "plaintiff's answer to the court in re of defendant's pleadings," "It is a Fact that the Internal Revenue Code is *NOT* Postive [sic] Law. That U.S.C. Title 26 has *NEVER* been passed by Congress." (Emphasis in original).

■ The only support that the court can find for this argument amongst plaintiff's numerous filings is a letter dated May 7, 1981 from the American Law Division of the Congressional Research Service (plaintiff's Exhibit 7). That letter does say that the Internal Revenue Code of 1954 "was not enacted by Congress as a title of the U.S. Code." But this does not in any way support plaintiff's argument that the Internal Revenue Code is not positive law. First, that very same letter, *in the very same sentence,* states that "the Internal Revenue Code of 1954 is positive law ...." Second, although Congress did not pass the Code as a *title,* it did enact the Internal Revenue Code as a separate Code, *see* Act of August 16, 1954, 68A Stat. 1, which was then denominated as Title 26 by the House Judiciary Committee pursuant to 1 U.S.C. § 202(a). Finally, even if Title 26 was not itself enacted into positive law, that does not mean that the laws under that title are null and void. A law listed in the current edition of the United States Code is prima facie evidence of the law of the United States. *See* 1 U.S.C. § 204(a). As the letter offered by the plaintiff points out, "The courts could require proof of the underlying statutes when a law is in a title of the code which has not been enacted into positive law." In short, this court has the discretion to recognize the Internal Reve-

nue Code as the applicable law, or require proof of the underlying statute.

Consistent with that discretion, this court recognizes that the Internal Revenue Code *is* positive law applicable to disputes concerning whether taxes are owed by someone like the plaintiff. This court refuses to embrace the plaintiff's position that the tax laws of the United States are some kind of hoax designed by the IRS to violate the constitutional rights of United States citizens. Quite simply, the court finds plaintiff's position preposterous.

■ The plaintiff's argument that the tax laws do not apply or pertain to him thus cannot be based on a "positive law" argument. The only other basis for the argument that this court can perceive is the possibility that the IRS assessed taxes against the plaintiff which he was not required to pay. An examination of the documents in this case, however, reveals that the plaintiff cannot rely on this argument either. The notices of deficiency attached to plaintiff's complaint indicate that the kind of taxes assessed against the plaintiff are "1040", or income taxes for wages received. The Internal Revenue Code makes clear that wages are gross income for taxation purposes when it states: "gross income means all income from whatever source derived, including ... compensation for services ...." 26 U.S.C. § 61(a). In the clearest language possible, the Seventh Circuit has stated that "WAGES ARE INCOME." *United States v. Koliboski,* 732 F.2d 1328, 1329 n. 1 (7th Cir.1984). Many other courts have reached the same conclusion. *See, e.g., Granzow v. Commissioner,* 739 F.2d 265 at 267 (7th Cir.1984); *Lively v. Commissioner,* 705 F.2d 1017 (8th Cir. 1983); *Knighten v. Commissioner,* 702 F.2d 59, 60 (6th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983); *United States v. Romero,* 640 F.2d 1014, 1016 (9th Cir.1981). It is thus clear that plaintiff should have been assessed the taxes sought from him.

■ The actions of the IRS in assessing civil penalties against the plaintiff were

also proper. Section 6653(a) of the Internal Revenue Code provides for the imposition of an addition to tax where underpayment or non-payment of taxes is caused by "negligence or intentional disregard of rules or regulations." The plaintiff here has filed no tax returns for the years in question. Such actions could have been perceived by the IRS as intentional disregard of the tax laws, as courts have consistently held that "even good faith reliance on misguided constitutional beliefs does not relieve a taxpayer of liability for such civil penalties." *Granzow*, at 267 n. 3; *Edwards v. Commissioner*, 680 F.2d 1268, 1271 n. 2 (9th Cir.1982). Although the court does not now rule that plaintiff in fact intentionally disregarded the rules, it does find that the IRS was not unjustified in assessing these penalties.

### 2. Bill of Attainder

 The complaint also contains allegations that the plaintiff was somehow subject to a bill of attainder. The factual basis for this claim is completely absent from the complaint or any of plaintiff's other numerous documents. It is clear, however, that plaintiff's claim does not fall under the current interpretation of the bill of attainder clause of the constitution. A bill of attainder is generally defined as a legislative act which determines guilt and punishes an identifiable individual or group of individuals. *See Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2802, 53 L.Ed.2d 867 (1977). Here, at least two of these three elements are not present. First, the Internal Revenue Code does not determine guilt. Although it authorizes the assessment of taxes and penalties, those assessments can be challenged in the tax court or in the district court. Thus, an assessment is not a conclusive determination of "guilt." Secondly, the tax laws do not punish. The mere fact that a law is burdensome does not make it punishment for bill of attainder purposes. *See Nixon, id.* at 470–71, 97 S.Ct. at 2804. An assessment of penalties for failure to file income tax returns may be punishment, but the fact that the penalties can be chal-

lenged on appeal means that the punishment is not final. The third element, selection of an individual or group of individuals, is not present, as the tax laws apply to all income earners and the penalty provisions apply to all taxpayers who fail to file. Such a blanket application to the population excludes the possibility of a "selection." It is thus clear that no bill of attainder or bill of pains and penalties (which is simply a lesser form of a bill of attainder) exists here.

Overall, it is abundantly clear that the tax laws apply with full force to plaintiff, and that his arguments are without any basis in the law. It is also clear that the exhibits offered to support his argument (in particular, the Congressional Research Service letter discussed above) undercut his argument, and in fact support the conclusion that the tax laws are positive law which apply to the plaintiff. It is in light of this obvious lack of merit in plaintiff's argument that the court now turns to defendants' motion for fees and costs.

### MOTION FOR FEES AND COSTS

 The American rule is that absent specific statutory or other expressed authorization, attorney fees are not recoverable by the prevailing party in a lawsuit. *International Union v. J. Ease Construction Company*, 541 F.Supp. 1334, 1337 (N.D.Ill. 1982). An exception to this rule has been recognized where a losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons ...." *Aleyska Pipe Line Service Company v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975). *See McCandless v. Great Atlantic & Pacific Tea Company*, 697 F.2d 198 (7th Cir.1983).

 The Seventh Circuit has made clear that bad faith can include the pursuit of meritless suits. In *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), the court held that insistence on litigating a question in the face of controlling precedents which removed every colorable basis in law for the litigant's position

amounted to bad faith justifying an award of fees. *Id.* at 1269–70. In *Reid v. United States,* 715 F.2d 1148 (7th Cir.1983), the Seventh Circuit stated that "the law may be so clear and well established that persistence in a course of litigation could be evidence of bad faith." *Id.* at 1154. Thus, this court has sufficient equitable power to assess sanctions for fees and costs if it finds that plaintiff's claim is meritless and in bad faith.

A second source of power to impose sanctions is found in the Federal Rules of Civil Procedure. Rule 11, which governs the signing of pleadings and motions, requires that each pleading or motion be signed by an attorney or the party (if the party is proceeding *pro se* ). The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule, the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney's fees incurred by the other party because of the filing of the pleading or motion.

■ The notes of the Advisory Committee on the Federal Rules make it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." The rule applies to anyone who signs a pleading, motion, or other paper, and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner* can be taken into account.

The core of Rule 11 is that the signature on the pleading certifies that "to the best of his knowledge, information and belief *formed after reasonable inquiry* it [the pleading, motion, or paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . ." (emphasis added). What is important to note is that this language requires more than just a belief that the law is or should be a certain way; as the Advisory Committee states, "what constitutes a reasonable inquiry may depend on . . . whether the pleading, motion, or other paper was based on a plausible view of the law," and is thus a "more stringent" standard than good faith.

■ Despite the apparently objective nature of this standard, two recent Seventh Circuit opinions have emphasized that Rule 11 requires a finding of subjective bad faith on the part of the person against whom fees are to be assessed. *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000 at 1007 (7th Cir.1984); *Badillo v. Central Steel & Wire Company,* 717 F.2d 1160, 1166–67 (7th Cir.1983). What constitutes subjective bad faith is not completely clear, although the *Suslick* court did re-emphasize that a claim lacking even a colorable basis in law can justify the award of fees. At 1006. However, it is clear that the Seventh Circuit has recognized the propriety of assessing fees in cases involving parties who claim not to owe income taxes or who file frivolous tax appeals. *See Granzow v. Commissioner,* 739 F.2d 265 at 269–270 (7th Cir.1984). Other circuits have also awarded costs for groundless actions involving the tax laws. *See Parker v. Commissioner,* 724 F.2d 469 (5th Cir.1984); *United States v. Hart,* 701 F.2d 749, 750 (8th Cir.1983); *McCoy v. Commissioner,* 696 F.2d 1234, 1237 (9th Cir.1983).

■ Under both general equitable principles and the provisions of Rule 11, this case is clearly one which merits the imposition of sanctions. Here, the plaintiff has argued that the Internal Revenue Code does not apply to him; yet courts have consistently ruled that wages are taxable income. Such argumentation in light of

these clear precedents constitutes insistence on litigating a question in the face of controlling precedent that remove any colorable basis in the law for the claim. This is precisely the kind of evidence which justifies a finding of subjective bad faith under the Seventh Circuit standard. Likewise, plaintiff's arguments are not based on any "plausible view of the law" as required by Rule 11. Perhaps the most egregious example of plaintiff's bad faith is that his argument for the tax laws not pertaining to him—that Title 26 is not "positive law" —is based on a letter that says that it *is* positive law. Any reasonable person reading that letter would have concluded that no plausible argument concerning "positive law" could be based on that letter. The fact that plaintiff proceeded with this suit in light of its obvious lack of merit indicates bad faith and that he proceeded with no reasonable expectation of success on the merits.

In an analogous situation, the United States Court of Appeals for the Seventh Circuit stated as follows:

> The doors of this courthouse are, of course, open to good faith appeals of what are honestly thought to be errors of the lower courts. But we can no longer tolerate abuse of the judicial review process by irresponsible taxpayers who press stale and frivolous arguments, without hope of success on the merits, in order to delay or harass the collection of public revenues or for other nonworthy purposes ... abusers of the tax system have no license to make irresponsible demands on the courts of appeals to consider fanciful arguments put forward in bad faith. In the future we will deal harshly with frivolous tax appeals and will not hesistate to impose even greater sanctions under appropriate circumstances.

*Granzow v. Commissioner,* 739 F.2d 265 at 268–269 (7th Cir.1984.) Similarly, the doors of this courthouse are open to good faith litigation but abuse of the judicial process, as in this case, will not be tolerated. The need to address these patently frivolous arguments wastes this court's precious resources and prevents it from providing sufficient attention to litigants with meritorious claims. Rule 11 requires that this court "shall impose" sanctions to penalize the abuse of the judicial system occasioned by the frivolous arguments of the plaintiff, arguments which any reasonable person with an understanding of how this country works would reject as senseless and meritless. Consistent with the mandates of Rule 11, this court will grant the government's request for attorney's fees and costs, and finds that a reasonable fee is $500.00. In addition, this court will assess a fine of $500.00 as a sanction for the commencement of this frivolous suit.

Finally, the court acknowledges receipt of plaintiff's letter on August 21, 1984, inquiring whether this court's order of August 13, 1984, staying all proceedings in this case pending resolution of the motion to dismiss also prevented the IRS from levying plaintiff's property and wages. With the granting of summary judgment for the defendants, of course, the stay of proceedings is lifted and the IRS is free to continue all legal efforts to collect plaintiff's delinquent taxes. However, this court also notes that none of the actions taken by the IRS between the time of the August 13, 1984, stay and the present were in any way violative of that order. The court's order was not an injunction against the IRS; it simply prevented the parties in this case from filing any further papers or motions *in this case.* By levying upon plaintiff's property and wages, the IRS did nothing that was germane to this case.

## CONCLUSION

For the foregoing reasons, the court hereby GRANTS summary judgment for the defendants, and DENIES plaintiff's Motion for Summary Judgment. The court also hereby ORDERS that the plaintiff must pay defendants $500.00 as reasonable attorney fees for having to defend against this frivolous action, and must pay $500.00 into the court as a Rule 11 fine for filing this meritless suit.